

**ORDERED in the Southern District of Florida on December 29, 2011.**

A. Jay Cristol, Judge
United States Bankruptcy Court

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| In re: | **CASE NO: 11-17047-AJC** |
| **FISHER ISLAND INVESTMENTS, INC.,** | Chapter 11 (Involuntary) |
| Alleged Debtor. | |
| _____/ | |
| In re: | **CASE NO: 11-17061-AJC** |
| **LITTLE REST TWELVE, INC.,** | Chapter 11 (Involuntary) |
| Alleged Debtor. | |
| _____/ | |

**MEMORANDUM OPINION DENYING THE ZELTSER ALLEGED DEBTORS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

In these consolidated and unusual Involuntary Chapter 7 Bankruptcy proceedings, two groups have appeared alleging that they represent the alleged debtors, Fisher Island Investments, Inc. ("FII"), a Florida corporation, and Little Rest Twelve, Inc. ("LR12"), a New York Corporation. One group is represented by Patricia Redmond, Esq., of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Joseph Rebak, Esq. of Tew Cardenas, LLP, and Martin

1

Russo, Esq. of Gusrae Kaplan & Nusbaum, PLLC, and shall be referred to as the "Redmond Alleged Debtors." The other group is represented by Emanuel Zeltser of Sternik and Zeltser, and Darin DiBello, Esq. of DiBello, Lopez & Castillo, P.A., and shall be referred to as the "Zeltser Alleged Debtors."

The Zeltser Alleged Debtors filed a Motion for Partial Summary Judgment ("Motion") (Case No. 11-17047-AJC  ECF No. 340; Case No. 11-17061-AJC ECF No. 271) seeking a determination that: (i) a Gibraltar Trust named the "Valmore Trust" (which the Redmond Alleged Debtors contends is the ultimate owner of FII and LR12) is invalid; (ii) that neither Gibraltar Law nor United Kingdom law applies in these cases; and (iii) that an entity named JWL Entertainment Group, Inc., a Delaware corporation ("JWL") is the equitable owner of FII and LR12.

The Redmond Alleged Debtors filed a Memorandum in Opposition to Motion for Summary Judgment ("Response") (Case No. 11-17047-AJC ECF No. 372; Case No. 11-17061-AJC ECF No. 304).  In response to point (i) it argues that any determination regarding the validity of the Valmore Trust should be made by a Gibraltar Court under Gibraltar law, that the Gibraltar Court implicitly found that the Valmore Trust was valid and made other explicit factual findings which were not appealed by Joseph Kay that are entitled to comity in this Court, that a New York Court has specifically declined to find that the Valmore Trust was a sham, and that the Zeltser Alleged Debtors have not rebutted the expert legal opinion concluding that the Valmore Trust is a validly constituted trust.  In addition, the Redmond Alleged Debtors argue that summary judgment in favor of the Zeltser Alleged Debtors is inappropriate based on the undisputed factual record.

In response to point (ii), the Redmond Group argues that Gibraltar Law and UK law should be applied. Finally, it argues that the Valmore Trust is the owner either directly or indirectly of FII and LR12.

For the reasons set forth below, the Court denies the Motion for Summary Judgment.

## Procedural History

A dispute has raged over the ownership and control of FII and LR12 since approximately March, 2010, in the Circuit Court in and for Miami-Dade County, Florida (which was removed to this Court in April, 2011), with respect to FII, and in the Supreme Court of New York, New York County, with respect to LR12. The Redmond Alleged Debtors and the Zeltser Alleged Debtors each allege that they are the proper parties in control of FII and LR12.

Involuntary Petitions were filed against FII and LR12 on March 17, 2011 by a group of entities and individuals purporting to hold claims against each of the Alleged Debtors (the "Petitioning Alleged Creditors"); some of these claims are allegedly based on a promissory note. On March 21, 2011, the Redmond Alleged Debtors entered appearances for FII and LR12 (Case No. 11-17047-AJC ECF No. 5; Case No. 11-17061-AJC ECF No. 6). On that same day, the Zeltser Alleged Debtors answered the Involuntary Petitions, consenting to the relief requested. (Case No. 11-17047-AJC ECF No. 6; Case No. 11-17061-AJC ECF No. 5). On March 22, 2011, the Redmond Alleged Debtors filed Emergency Motions to Strike the Involuntary Answers filed by the Zeltser Alleged Debtors. (Case No. 11-17047-AJC ECF No. 11; Case No. 11-17061-AJC ECF No. 8). The Redmond Alleged Debtors filed Answers raising defenses and claims which evidence a good faith dispute regarding the Involuntary Petitions. (Case No. 11-17047-AJC ECF No. 49; Case No. 11-17061-AJC ECF No. 39).

The appearance of two groups claiming to be the same alleged debtors was highly unusual. It was also highly unusual that the Zeltser Alleged Debtors immediately consented to the entry of an order for relief. During a hearing on March 25, 2011, this Court voiced that something "smelled" about a case being filed and immediately consented to by the Zeltser Alleged Debtors, and that these Involuntary Petitions were sort of like "voluntary involuntary petitions." (Case No. 11-17047-AJC ECF No. 28; Case No. 11-17061-AJC ECF No. 23).

As a threshold issue, this Court must determine the ownership and control of the Alleged Debtors. If the Redmond Alleged Debtors represents the Alleged Debtors, these are contested Involuntary Petitions. If the Zeltser Alleged Debtors represents the Alleged Debtors, these are uncontested Involuntary Petitions. Other issues which remain to be litigated are whether the debts alleged by the Petitioning Creditors were actually incurred, and whether the Alleged Debtors are generally paying their debts as they come due. These fights remain for another day.

Because of the unusual posture of this case, on April 19, 2011, pursuant to 11 U.S.C. § 1104(c), the Court directed the U.S. Trustee to appoint an examiner in the Involuntary Actions, with the powers and duties set forth under Sections 1106(b) of the Bankruptcy Code to:

> (a) investigate the ownership composition of the alleged Debtors, and investigate who are their actual and duly authorized representatives and attorneys;
>
> (b) examine the Promissory Notes and other documentation (including guarantees, Forbearance Agreements, and Demand Notices) upon which the petitioning creditors rely to allege their claims, the makers of such Promissory Notes, the makers' execution of the Promissory Notes, the payees thereof, and the overall propriety and authenticity of the Promissory Notes;
>
> (c) examine the Assignments of the Promissory Notes above, the parties to, and the execution thereof, and the overall propriety of the Assignments;

> (d) investigate the allegations contained in the Verified Motion For An Order Requiring Plaintiff To Show Cause Why The Complaint Should Not Be Dismissed and For Sanctions Based on Fraud On the Court (DE # 2 in the Adversary case styled *Fisher Island Investments, Inc. v. Andrew Baker, et al.,* Adversary Case No. 11-01886-AJC, civil action which was removed by the Plaintiff to this Court from the Circuit Court of the 11th Judicial Circuit, in and for Miami-Dade County, Florida); and
>
> (e) examine the financial affairs and records, including but not limited to, bank statements of each of the alleged Debtors for the last six (6) months and examine their individual list of assets.

(Case No. 11-17047-AJC ECF No. 55; Case No. 11-17061-AJC ECF No. 45). On April 25, 2011, the U.S. Trustee appointed James Feltman as Examiner in these cases (Case No. 11-17047-AJC ECF No. 60; Case No. 11-17061-AJC ECF No. 45) which the Court approved on April 27, 2011. (Case No. 11-17047-AJC ECF No. 64; Case No. 11-17061-AJC ECF No. 50). Both the Redmond Alleged Debtors and the Zeltser Alleged Debtors produced documents and witnesses to the Examiner, and the Examiner delivered his report to the Court on November 21, 2011, the same day that the instant Motions for Summary Judgment were filed.

The Examiner reviewed thousands of pages of documentation submitted by both the Zeltser Alleged Debtors and the Redmond Alleged Debtors, and filed a 96-page Report. He concluded that the Valmore Trust was the ultimate owner of FII and LR12, and rejected the Zeltser Alleged Debtors Sham Trust Argument. (Case No. 11-17047-AJC ECF No. 338; Case No. 11-17061-AJC ECF No. 269 at pp. 76-77.) With respect to FII, he found that the Zeltser Alleged Debtors had submitted documents that were intentionally submitted in an "effort to mislead or misrepresent material facts to the Court." (Case No. 11-17047-AJC ECF No. 338; Case No. 11-17061-AJC ECF No. 269).

5

**Material Facts**

A. **Formation of the Valmore Trust**

The "Fisher Trust" was formed as a Gibraltar trust by Declaration of Trust dated March 1, 2006 (the "Valmore Trust Agreement"). *See* the Valmore Trust Agreement, Exhibit A to the Response. The name of the Fisher Trust was changed to the "Valmore Trust" on October 1, 2006. *See* Written Resolution of Fisher Trust dated October 1, 2006, Exhibit B to the Response. The original Trustee of the Valmore Trust was Miselva Etablissement ("Miselva"). Miselva is a Liechtenstein entity owned and controlled by Andrew Baker, who is in the business of setting up and administering trusts. According to the terms of the Valmore Trust Agreement, Fallon Invest & Trade, Inc., an entity incorporated under the laws of the British Virgin Islands ("Fallon"), was named the Protector of the Valmore Trust with certain specifically enumerated powers set out in the Valmore Trust Agreement.

The Valmore Trust was set up by David Ashfield, the then Chief Financial Officer of London International Bank, and Mohammed Ali Guidfar, the then Chief Executive Officer of London International Bank. *See* Adversary Hearing Transcript, Baker Testimony, *Fisher Island Investments, Inc., v. Baker*, in the 11th Judicial Circuit in and for Miami-Dade County, Case No. 10-14866 CA, dated April 29, 2010, at pp. 8:14 - 9:12 ("Baker Testimony" or "Adversary Hearing Transcript") (Appendix 1 to the Response); *see also* Transcript of Deposition of David Ashfield, *In re Fisher Island Investments, Inc.*, (Bankr. S.D. Fla. 2011), Case No. 11-17047-AJC, dated August 5, 2011, at pp. 20:11-21:23 ("Ashfield Transcript" or "Ashfield Deposition") (Appendix 2 to the Response). Both Mr. Baker and Mr. Ashfield testified they believed that the Valmore Trust was being created for the benefit of Kay and his family and was being funded through conveyance into the trust of assets then owned by Kay.

B. <u>**The Gibraltar Litigation**</u>

The belief that the Valmore Trust was set up by Kay for his and his family's benefit was called into question after the death, in February 2008, of Arkadi "Badri" Patarkatsishvili ("Badri"). In March 2008, lawyers for Badri contacted Baker and informed him that Badri's family claimed an interest in the assets of the Valmore Trust. Baker then filed an action in the Supreme Court of Gibraltar, Chancery Division on April 21, 2008 (the "Gibraltar Litigation") seeking a determination as to the true settlors and beneficiaries of the Valmore Trust and requesting injunctive relief to suspend the power of Fallon (the Protector) to remove the Trustee of the Valmore Trust. The Gibraltar court granted injunctive relief on April 21, 2008 suspending Fallon's right to replace the Trustee. *See* Gibraltar Order issued April 21, 2008, Exhibit C to the Response.

The principal issues before the Court in the Gibraltar Litigation were: (1) whether the assets transferred into the Valmore Trust belonged to Badri or Kay; (2) whether Kay transferred assets into the Valmore Trust on his own behalf or on behalf of Badri; (3) whether Badri or Kay was the real settlor of the Valmore Trust; (4) whether the Valmore Trust was established and should be administered for the benefit of Kay and his family or for the benefit of Badri and his family; and (5) whether the assets transferred into the Valmore Trust were held on some other basis. *See* Gibraltar Judgment dated December 17, 2009, Exhibit D to the Response.

After an approximately two year proceeding, including a trial that lasted several weeks, and after reviewing the statements submitted by the key witnesses, the Gibraltar Court issued a 79 page Order addressing the bona fides to the claims to the assets maintained within the Valmore Trust. The Court initially determined that the Valmore Trust was settled directly by Kay and indirectly by Badri with Kay acting as Badri's nominee. *Id.* The Court reserved ruling

7

on the issue of the division of the Valmore Trust assets as between the various beneficiaries, advising that an accounting and further proceedings on the issue would be necessary. *Id*. The Court indicated, however, that the vast majority of the assets in the Valmore Trust had been funded by Badri and were being held for the benefit of Badri's family. *Id*.

Joseph Kay appealed the Judgment but abandoned the appeal. On February 1, 2010 Joseph Kay's appeal was formally dismissed by the Court of Appeal. *See* Exhibit F to the Response, Gibraltar Order of February 1, 2010 striking Joseph Kay's appeal. Before February 1, 2010, Badri's family made an application before the Supreme Court seeking *inter alia* a declaration that Joseph Kay had no interest in the Valmore and Summit Trusts. On February 1, 2010 the Supreme Court of Gibraltar found that Joseph Kay, "has no interest in the Valmore Trust" and that the assets contributed to the Valmore Trust belonged solely to Badri. *See* Exhibit G to the Response, February 1, 2010 Gibraltar Order. The February 1 Order was not appealed by Kay and is a final ruling in this Gibraltar case.

The Gibraltar court explicitly determined the settlors and beneficiaries of the Valmore Trust, but the Gibraltar court notably did **not** find the Valmore Trust was in any manner invalid.

### C. The New York Litigation

In March, 2009, in connection with a pre-existing case pending in the Supreme Court of the State of New York *Little Rest Twelve, Inc. et al. v. Visan et al.* Index No. 600676/2007, the court undertook to resolve certain questions concerning proper legal representation of LR12, a party in that case. Imedinvest Partners was a party to the New York case and participated in the trial of the representative issue through its counsel Emanuel Zeltser. This resulted in a lengthy written decision by Justice Fried (the "New York Decision"). *See* New York Decision, Exhibit H to the Response. This decision was rendered after the court conducted an evidentiary hearing

8

over 11 days between May 15 and December 16, 2010. The issue decided was whether to permit Gusrae Kaplan Nusbaum ("GKN") and Martin Russo, Esq., to be substituted for Sternik & Zeltser and Emanuel Zeltser, as counsel for LR12. The parties agreed that to resolve the question the court had to make a provisional finding about ownership of LR12. *See* New York Decision, Exhibit H to the Response, at p. 2. Because GKN was attempting to change the status quo, it had the burden to prove that Miselva owned LR12. *Id.* at pp. 2 and 3. The New York Court found that GKN met its burden. *Id.* at p. 44.

In that proceeding, Mr. Zeltser, much as he is doing in the instant motion, claimed on behalf of Imedinvest Partners and Joseph Kay that the Valmore Trust is a "sham trust." Mr. Zeltser's position was rejected by Justice Fried "on multiple grounds." *Id.*, at p. 41. In particular, Justice Fried noted that the Gibraltar Court, the court best suited to determine whether the Valmore Trust was a sham, did not find that the Trust was a sham.

### D. Operation of the Valmore Trust

Upon its creation, the Valmore Trust's sole named beneficiary was the International Red Cross. However, one day after the trust was settled, an additional beneficiary was named, as provided for in the Trust Agreement. *See* Exhibit I to the Response, Resolution of the Fisher Trust dated March 2, 2006, designating David Aim as a beneficiary of the Trust. Thereafter, other beneficiaries were named or removed from the Trust via Trust Deeds (including removal of the International Red Cross as a beneficiary). The Gibraltar court later determined and ruled that the beneficiaries of the Valmore Trust were the heirs of Badri, whose assets, the court ruled, had been used to create the Valmore Trust Fund. *See* Exhibits D and G to the Response, Ruling of

the Gibraltar Court and February 1, 2010 Order determining that Kay has no interest in the Trusts.

The Valmore Trust Fund was initially established with $1,000, nominally contributed by Miselva as part of its creation of the trust. However, immediately following formal creation of Valmore, additional assets were conveyed to Miselva as Trustee to become the principal initial components of the Trust Fund, such conveyance being as provided for in the Valmore Trust Agreement. *See* Exhibit I, Resolution of the Fisher Trust dated March 2, 2006. It is undisputed that both Fisher Island and LR12 (through Fisher Island Limited ("FIL") and Grosvenor Trading House Limited ("GTHL"), their respective holding companies) were conveyed into the Trust Fund. *See* Appx. 2 to the Response, Ashfield Deposition at pp. 32:8-34:13 and Exhibits 10, 11, 12. Indeed, counsel for the Zeltser Alleged Debtors has admitted that Fisher Island was an asset of the Valmore Trust at some point. *See* Appx. 1 to the Response, Adv. Hr'g Tr. of 4/29/10 at p. 66:3-10. When the Trustee accepted assets into the Valmore Trust Fund, it explicitly noted the addition of the property. *See*, *for example*, Exhibit I to the Response, and Written Resolution of the Trust dated April 7, 2006, Exhibit J to the Response.

The Valmore Trustee retained sole authority to distribute assets that had been conveyed into or acquired by the Trust Fund (subject only to approval of the Trust's Protector). *See* Exhibit A to the Response, at §§ 4 and 7. Consistent with this fact, when Joseph Kay demanded in March 2008 that the Trustee distribute monies to Kay in cash assets of the Trust Fund, Mr. Baker declined to do so. *See,* Adv. Hr'g Tr. of 4/29/10 at p. 12:14-21. When Kay sought to circumvent this legitimate exercise of Baker's authority by removing Baker as Trustee, the Gibraltar court enjoined Kay from doing so. *See* Exhibit C to the Response, Gibraltar Order issued April 21, 2008.

### E. David Ashfield's Testimony

The Zeltser Alleged Debtors place heavy reliance on their interpretations of the deposition testimony of David Ashfield. *See* Ashfield Depo., Appx. 2 to the Response. It is not contested that David Ashfield served in various capacities for and at the direction of Joseph Kay from approximately six months prior to the creation of the Valmore Trust until his resignation from all such roles in 2008. In these roles, Ashfield undertook a wide range of actions as evidenced by documents which he subsequently confirmed as having executed. *See generally, id*. at pp. 1-97. However, he also testified that certain documents that are relied upon by the Zeltser Alleged Debtors and which purport to bear his signature were not signed by him. *Id.* at pp. 31:11 – 32:13 and p. 72; 73:21 – 74:17, and Exhibits 9, 35, and 36 to the Ashfield Depo.

Ashfield also testified as to his understanding of the relationship between Joseph Kay and the Valmore Trust and assets held within it. *See generally, id.* at pp. 97 – 272. Ashfield makes clear in his testimony that his pre-2008 views as to Joseph Kay's relationship to the assets changed markedly following Badri's passing and the questioning of ownership that then ensued. He even sought advice from his personal attorney. *Id.* at pp. 78:12-86:12. Ashfield's Testimony, while useful in confirming various acts he did (or did not) perform, is of little probative value regarding the relationship between Joseph Kay and the Valmore Trust and its assets as it lacks foundation.

### Discussion

### I. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, as incorporated by Federal Rule of Bankruptcy Procedure 7056, a court shall grant "summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." *In re PSN USA, Inc.*, Case No. 02-11913-BKC-AJC, 2011 WL 4031147 at *2 (S.D. Fla. Sept. 9, 2011); Fed.R.Civ.P. 56(a). The movant bears the burden of proving that there is no dispute as to any material fact. *Id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986).

In deciding a motion for summary judgment, all factual inferences must be viewed in the light most favorable to the non-moving party. *Id.; Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986). "When the moving party has carried its burden under Rule 56... its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita* at 586; *see also Smith v. F.W. Morse & Co.* 76 F.3d 413, 428 (1st Cir. 1996) (genuine issue of material fact "means that the evidence on point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party"); *Ellis v. England*, 432 F.3d 1321, 1325-26 (11th Cir. 2005) (genuine factual disputes must have a real basis in the record and unsupported factual allegations are legally insufficient to defeat a summary judgment motion); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986).

Moreover, "[s]ummary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *In re Rimer*, 09-21235-BKC-PGH, 2010 WL 3294711 (Bankr. S.D. Fla. Aug. 18, 2010); *Herzog v. Castle Rock Entm't,* 193 F.3d 1241, 1246 (11th Cir.1999). In ruling on a motion for summary judgment, all justifiable inferences are to be drawn in favor of the non-moving party. *Anderson* at 255.

Pursuant to Fed.R.Civ.P. 56(f), as incorporated in Fed.R.Bankr.P. 7056(f), after notice and an opportunity to respond, the court may grant summary judgment for a non-movant or

consider summary judgment on its own, after identifying for the parties material facts that may not genuinely be in dispute.

## II. Gibraltar Law Governs

The Zeltser Alleged Debtors' Motion urges the Court to find that the Valmore Trust is a sham trust, and that neither Gibraltar nor UK law applies to any aspect of this proceeding. The Zeltser Alleged Debtors argue that Joseph Kay set up the structures to defraud his creditors and as such, is repugnant to U.S. policy, and that the Gibraltar forum selection clause in the Trust Deed should be disregarded by this Court, which should thereafter apply U.S. law to determine that the Valmore Trust is a sham.

The Court is not persuaded by these arguments and finds that as a matter of law, the Zeltser Alleged Debtors are incorrect. The Trust Agreement clearly provides that any dispute regarding the Trust is to be determined in Gibraltar under Gibraltar law. Paragraph 18 of the Valmore Trust Declaration provides:

> 18. Applicable law and jurisdiction
>
> 18.1 **THE** proper law of this Settlement shall be that of Gibraltar and all rights under this Settlement and its construction and effect shall be subject to the jurisdiction of and construed according to the laws of Gibraltar **(emphasis in original)**
>
> 18.2 The Courts of Gibraltar shall be the forum for the administration of these trusts.

An eighteen-month proceeding took place in Gibraltar which resolved certain issues relating to the Trust. There is no reason for this Court to revisit any of those issues. *See* Transcript of the Proceedings of November 21, 2011 at p. 10: 22-11: 2.

It is not disputed that Joseph Kay, a Director of FII, participated extensively in the Gibraltar proceedings. As stated by Justice Fried:

> The defendants in the Gibraltar proceedings included Joseph Kay. The Gibraltar proceedings involved a five-week trial in May and June 2009. Throughout these proceedings, Joseph Kay was represented by counsel, participated in discovery, and testified as a witness at trial. Nina Zajic, his sister, also testified on his behalf.

*See* Memorandum Decision of Justice Fried dated July 22, 2011.

Where a valid judgment has been rendered in a foreign nation and there exists no special reason why comity should not allow the judgment full effect, the merits of the case will not be tried anew in the United States upon the mere assertion that the judgment was erroneous in law or in fact. *Hilton v. Guyot*, 159 U.S. 113, 158 (1895). A valid judgment will be held conclusive upon the issues tried in the foreign country except under special circumstances, as, for example, where principles of international law or comity preclude it from receiving full credit and effect. *Id*. Thus, a court of the United States will recognize a judgment entered in a foreign nation if the foreign tribunal had jurisdiction and the parties to the foreign action had an opportunity to present their claims to the foreign tribunal following procedures designed to secure the sound administration of justice. *Ma v. Continental Bank N.A.*, 905 F.2d 1073, 1075 (7th Cir. 1990).

Neither the Zeltser Alleged Debtors nor the Petitioning Alleged Creditors have advanced any legitimate reason why this Court should not grant comity to the Gibraltar Decision and Order. The Petitioning Alleged Creditors argue that comity should not be afforded to the Gibraltar Judgment because the proceedings reflect that the process was fraught with witness tampering and perjury. In support of this, they cite to a portion of the opinion discussing the testimony of David Aim and cite to an alleged sworn statement of Esther Meimoun. Esther Meimoun is the mother of two of Joseph Kay's children, but no copy of her alleged sworn

14

statement, authenticated or unauthenticated, was produced. And, although the Gibraltar Court recognized that Mr. Aim "carried much baggage," that he parted with Kay on "acrimonious terms" and that he has a "palpable hatred of Kay," *See* Gibraltar Decision of December 17, 2009 at ¶¶ 42 – 44, the Gibraltar Court nonetheless determined that Mr. Aim's testimony was credible because "it was not materially challenged" and because it "afforded a logical explanation as to the manner and reasons for the way in which the assets were funded, [p]articularly when in contrast Kay is unable to shed any light on the detail of the various transactions." *Id.* at ¶¶ 42, 45.

The Petitioning Alleged Creditors also argue that comity should not be afforded because Judge Dudley acted as the ex-officio Judge on Joseph Kay's appeal from Judge Dudley's own decision in violation of Gibraltar law. This is not true. As made clear in the record, Mr. Kay abandoned his appeal and the judgment was affirmed on default. *See* Gibraltar Order of February 1, 2010.

Joseph Kay stipulated in the New York proceeding, through Emmanuel Zeltser his counsel in that proceeding who is also counsel for the Zeltser Alleged Debtors in this proceeding, that he was represented by counsel throughout the Gibraltar proceedings; that he had notice of the Motion underlying the Gibraltar Order and the draft Order before it was entered; that the Court issued the February 1st Order on Default; and that Mr. Kay had an opportunity to submit grounds after filing a Notice of Appeal of the Gibraltar Court's judgment and subsequent Orders but did not to do. *See* New York Decision at p. 9.

For the Court to adopt the Zeltser Alleged Debtors' argument, it would need to specifically reverse certain findings made by the Gibraltar Court. This Court declines to do that;

this Court is not an appellate court. Any appeal of the findings made by the Gibraltar court can only be made to the courts in Gibraltar.

Based on the foregoing, the Court rejects the argument that the Valmore Trust is a sham. No policy of the United States would be offended by application of Gibraltar law to these proceedings. To the extent that the Zeltser Alleged Debtors request this Court to determine that the Valmore Trust is a sham or that Gibraltar law should not apply, the Court denies the Motion.

### III.     The JWL Transaction

The Zeltser Group argues that this Court should make a determination regarding the JWL transaction yet, at the same time, argues that this Court is without the authority to make such a determination. *See* Motion for Summary Judgment at p. 28.

Based on the record, an inference can be drawn in favor of the Redmond Alleged Debtors that the JWL transaction was abandoned. If this inference is drawn, pursuant to the unrebutted Declaration of Elizabeth Weaver, neither legal nor beneficial ownership of Fisher Island Limited or Grosvenor Trading House Limited passed to JWL. This is sufficient to deny the Motion.

Because the Zeltser Alleged Debtors' Motion is not supported by facts or the law, it is --

**ORDERED** and **ADJUDGED** as follows:

1.     The Motion is DENIED.

2.     Pursuant to FRBP 7056(f), the Court is inclined to determine as a matter of law that Miselva owns Fisher Island Limited and Grosvenor Trading House Limited. Before making such determination, the Zeltser Alleged Debtors may file within twenty-one (21) days a legal memorandum, based on the existing record, to persuade the Court not to enter summary judgment as indicated.

###

**Copies furnished to:**

Patricia Redmond, Esq. who shall serve a copy of this order upon all interested parties immediately upon receipt of same and shall thereupon file a certificate of service.